Please be seated. Good morning, everyone. We have Judge Beatty with us by video. Judge Beatty, can you hear us? Yes, I can. Thank you, Judge Rawlinson. Thank you. The cases will be called in the order listed on the docket. The first case on calendar is Forbes Media v. United States. Counsel for appellant, please approach and proceed. Good morning. Thank you, Your Honor. And may it please the Court, Grayson Clary for appellants. I'd like to reserve three minutes for rebuttal today. Counsel, please be reminded that the time shown is your total time remaining. Thank you. I appreciate that, Your Honor. In these the two-century-old All-Writs Act, appellants have moved to unseal specific All-Writs Act orders, All-Writs Act applications, sealing motions and orders, and docket sheets. And everyone substantially agrees what the records at issue in this case actually say. They describe the government's successful bid to enjoin Sabre, a travel technology company, to provide the government with hot watch monitoring in aid of the execution of arrest warrants. That information is not secret. Appellants have already reported it. The government has already confirmed it. And in fact, the government concedes, as its 28-J letter described, that All-Writs Act applications and orders describing the same form of assistance from the same company can be disclosed essentially in their entirety in the Eastern District. Counsel, I think the problem is the timing of the requested disclosure. Can you address that? Yes, Your Honor. The District Courts in this case concluded that all of the kinds of records we requested are subject to the bright line, no-access rule of times mirror of the United States on the theory that they are pre-indictment warrant materials. There are two problems with that approach. I think the first and most straightforward is that even taking the unit of analysis as the District Courts did, All-Writs Act technical assistance materials, those records are not warrant materials and they don't meaningfully resemble them. They have systematically different contents. They play a different role in the legal process than warrant materials do. And as a result, the key consideration that underpins the times mirror rule, which makes the ongoing investigation dispositive, doesn't hold in the context of the All-Writs Act. Counsel, would you elaborate a little bit on your representation that they play a different role than warrant materials do? Sure. Happily, Your Honor. So I think it might make sense to start with the last point I mentioned, the internal logic of times mirror and how warrant materials differ from All-Writs Act materials on that point. Because as this Court explained, times mirror is, as you were noting earlier, a rule about timing. The Court explained that the incremental value of access to warrant materials pre-indictment is slight relative to the transparency the public is already guaranteed at a subsequent suppression hearing, which will provide the full and open opportunity to litigate whether the particular search at issue was valid. But this Court underlined in times mirror that warrant materials will in due course be disclosed. Unfortunately, where All-Writs Act materials are sealed in the first instance, they don't resurface at a later stage of the criminal process. And you can see that concretely in the case from the Southern District of California, where even though that matter has long since proceeded to final judgment, there isn't even a hint on the public docket that the All-Writs Act order entered there exists. And as a result, when you transplant the times mirror rule from the warrant context to the All-Writs Act setting, you transform it from a principle only designed to defer access to a more convenient time into one that will typically deny access entirely and indefinitely, depriving the public of any meaningful sense of the lawful scope of court-ordered technical assistance. But can't that be remedied by an order requiring the disclosure once the urgency for confidentiality has been removed? Well, we certainly think it's something like what the Northern District of California did is the bare minimum, if you want to make a distinction between ongoing and closed investigations practically workable. But I don't think it cures the core harm of extending the times why do these legal processes function differently? In the warrant context, the court's role is really limited to judging whether the facts in the application state probable cause. And the full adversarial exchange about whether that search complied with the Constitution is deferred into a later point in time. But the initial action on the All-Writs Act application is very much the full and final opportunity to judge whether the assistance the government As a result, if the ongoing investigation is dispositive, that critical moment for public deliberation will always be insulated from public scrutiny. It would be as if the Apple FBI litigation and all of the intense legal arguments that occasioned, all the intense public debate, all of the congressional proposals for reform was only able to take place five, ten years after the actual controversy had unfolded. And I think these legal process distinctions also help to explain why, as a practical matter, All-Writs Act technical assistance materials just don't look a lot like warrant materials. And I think this court can see that very clearly by looking to the SABR application order that were unsealed in the Eastern District of Virginia and that are attached to our request for judicial notice. Those records just don't match the district court's description of what technical assistance materials will typically contain. And as a result, they don't implicate the kinds of Counsel, is it your position that release of these materials would in no way compromise any ongoing criminal investigation? Well, we think the analysis needs to be carried out by drawing a specific linkage to the documents, as this court put it in Kamakana. Certainly, there is some information in these records that we agree the government might be able to make a showing it needs to conceal. The most obvious point would be the names of the SABR order and application from the Burkov filings. Those investigative facts take up a tiny fraction of the overall application and order. There is no probable cause section in records like this, stuffed with sensitive reasons to believe a private individual committed a crime. There is no discussion in those records of witnesses or confidential informants. And there are no technical or operational details about how exactly the assistance will be accomplished that a target of the order could use to defeat it. So I think whatever level of generality you look at, whether it's the internal logic of Time's Mirror or the legal process role that technical assistance materials and warrant materials play, or if it's just the practical fact of their contents, I don't think the warrant analogy on which the district courts relied to make the ongoing investigation a light switch. I guess just to pick up on some of the points Judge Rollinson was making, you've made some distinctions. I guess I question whether these distinctions are too fine from when you take a step back and look at what we're dealing with here, because we have kind of two sets of legal doctrines, First Amendment and common law. There are some differences, but it seems to me at a high level they're sort of swimming in the same direction. They're talking about a historical backdrop and sort of the positive need, the affirmative case, the policy case. And it seems like on both of those, there's not really a historical backdrop for this, and there are some pretty compelling reasons against disclosure, even accepting some of the distinctions you've made as compared to the warrant. So I guess just doctrinally, from those two standpoints, why do you think you should prevail here? Well, I have to disagree a bit with your honest framing. The common law and the First Amendment do ask very different questions when it comes to the sort of considerations of experience and logic you were getting at. I agree the First Amendment requires us to show, as Times Mirror explained, that the benefits of access outweigh the cost, and that the experience of access is an important element of that. Now, I think we've demonstrated that, and I'm happy to explain why. The common law does not ask that question. As Kamakana explained, when this Court uses the phrase traditionally kept secret to describe documents that are exempt from the common law presumption of access, it's actually a very narrow term of expressly that even documents that are, quote, usually or often determined to be confidential after a case-by-case weighing of the relevant interests are not necessarily traditionally kept secret for purposes of the common law presumption of access. Instead, what this Court has done in cases like Times Mirror or the handful of other decisions applying the traditionally kept secret approach is ask whether there is a reason to adopt a categorical rule for a particular class of records, rather than adopting the usual case-by-case common law approach to accommodating the competing interests that might be at stake. Because Kamakana itself, for instance, is a case about the government's interest in concealing an ongoing investigation. But this Court's default framing in that setting, outside the narrow warrant context, is to conceal material that actually implicates that interest in the ongoing same document. That being said, I think we can show that experience and logic favor access. And I think that's true regardless whether you take the denominator as technical assistance materials ancillary to a sealed warrant in an ongoing investigation, or whether, as we've argued, you apply the right of access inquiry to each category of documents we sought based on that category's role in the legal process. To start with technical assistance materials as such, I take it we both parties agree that history substantially begins with New York Telephone itself, which unfolded in plain view. The pen register order there had been issued in 1976, and by 1977, after public briefing and public arguments, the justices in the public opinion resolved whether the All Writs Act in fact allowed the government to compel installation of a pen register. And if you take a look at the New York Telephone company's brief in that case, it characterizes the FBI's investigation as ongoing. So I think a rule that implies New York Telephone itself should have been resolved in a secret opinion to make sure that criminals don't know the answer to the question whether the All Writs Act could be used to install a pen register can't be the right one. And we've offered a number of examples in which courts have made an express determination that sealing an All Writs Act order would be unjustified even when the related warrant remained unexecuted or under seal, and even when the relevant question was answered. Mr. Is there any case that's done this? You pointed to some district court cases, but I don't I don't think those really show any sort of robust, if any, support. This seems like it's asking for something very new. Well, I mean, Your Honor, this Court's own opinions in the All Writs Act context have resolved controversies about what the statute does and doesn't authorize in public. It's certainly true that sometimes where compelling interest would prevent, say, an open argument, this Court has closed that portion of the proceeding. But if you think about the process that led Congress to create specific congressional authority for wiretap act technical assistance orders, that unfolded because this Court, in a published opinion, resolved whether the All Writs Act instead could be used to compel insistence with a wiretap. Congress did not like the result the Court reached and was able to modify the statute as a result. That I think is the norm that we expect in this area, because the All Writs Act is really a gap-filling statute. If its boundaries can be tested and defined entirely in secret, then there's an obvious risk that the rest of Congress's careful design is going to get washed out. But so why wouldn't, why couldn't Congress, you could make these arguments to Congress and they could they could look at this and say, you know, you make a good point and we should enact some rules that set the timing of disclosure, but you're asking us to do that. Well, the basic logic of the right of access, as the Supreme Court's articulated in cases like Richmond newspapers, is that it's supposed to enable the individual citizen to take part in that public debate. We're not supposed to have to rely on Congress to get into a dramatic subpoena fight with the executive over what it might be doing in secret before we can have a public debate about whether a particular form of assistance is authorized. That goes back to whether, under historically and experience, those rights have been recognized. And I think that's the difficulty, at least I'm having with this, that this is not something that historically has been part of the common law or First Amendment experience. Well, again, I would note in terms of your reference to the common law and the First Amendment, the common law does not require a separate history of access. And I would underline, we do think that's the easiest way to resolve this case, because the traditionally kept secret inquiry is so, so narrow compared to the First Amendment's more searching experience and logic. So what's your argument under the common law? Well, our argument under the common law goes to the considerations we were discussing before, which is there are vanishingly few categories of records that are exempt from the common law presumption of access. I believe the last time this Court listed them out, it's just pre-indictment warrant materials, grand jury materials, and attorney-client privileged material. As we were discussing earlier, the warrant analogy doesn't fit here. The grand jury analogy doesn't work either, because as this Court explained in index newspapers, the reason for concluding that those are traditionally kept secret for purposes of the common law presumption of access is that Rule 6e requires secrecy to the extent necessary to conceal matters occurring in the present tense before a grand jury, and therefore makes the ongoing investigation dispositive. There is not a free-floating rule, though, in this Court's precedent that judicial records of any kind that discuss an ongoing investigation are exempt from the common law presumption of access. That's exactly the principle this Court rejected in Kamakana. And so our common law argument is just that this Court should take its typical approach, because the All-Writs Act context is fundamentally different than the other investigative analogies on which the government relies. So is your argument that under the common law approach, we should ignore any security concerns or any concerns about compromising the criminal investigation? No, of course not, Your Honor. Our point is just that the common law separates those considerations into two different stages of the inquiry, whether the presumption of access attaches and whether it's overcome on the facts of the particular case. The problem here is that the district courts didn't engage in a genuinely separate second stage of the analysis, which would have required them to ask if the interests they identified generically or hypothetically with respect to All-Writs Act materials are at stake with respect to the particular records and particular portions thereof at issue here. They didn't do that. Were the records provided to the district court? I can't speak to whether they were sort of directly looking at the records or just relying on the government-sealed statement of facts. We moved to unseal that so that we could have a sense of what arguments the government was advancing about what the records do and don't contain. That motion was denied, so I'm afraid I can't answer that for you. But I do think that if you just look at the examples of All-Writs Act applications and it's clear the interests on which the district courts relied and which the government advances cannot plausibly extend to the entirety of the records. We all already know what form of assistance SABRE provided. We know that SABRE provided that assistance. And as a result, this whole argument about the secrecy of law enforcement techniques, that might be relevant in some future case, but it just isn't presented here. At a minimum, the district court should have ordered the disclosure of the information that overlaps with what we all already know from other public court records while maintaining the rest under seal. When you say we already know, are you referring specifically to the Southern District of California application? Or are you referring to other sources? I'm also referring to the affidavit that the government itself submitted from a special agent of the FBI in the Western District of Washington. And that affidavit does two important things. First, it affirmatively characterizes the records that are under seal in the Western District of Washington. As all Writs Act orders to SABRE, it required it to produce information to the government in aid of the execution of arrest warrants. The second important thing that affidavit does is it says that the declarant conferred with the Department of Justice about the Southern District of California and learned that those were court records that the United States had asked the Southern District of California to seal. So I, despite some of the language about purported application in the government's brief, I don't understand there to actually be a dispute that the Southern District of California application is authentic, especially given that it overlaps maybe 50, 75 percent of the document with what the government has agreed to unseal in the Eastern District of Virginia. Because typically the government copy and pastes these records from case to case. I think in that light, the District Court's suggestion that nothing could be unsealed here without compromising the investigation just can't possibly fit the facts. Now to be clear, we think that there's a keen public interest in transparency, even in cases where the government is asking for a new form of assistance, asking a federal court to assign it authority that Congress has not specifically contemplated or authorized. And in fact, the government argued that itself in the Apple v. FBI litigation, explaining that democracies resolve these questions through robust debate. But the case here is, as I'd like to underline, is even easier because this technical assistance at issue is already about as public as public gets. Counsel, sorry, I know you want to reserve some time and I don't want to take too much of your time, but if I understand your argument, you're agreeing that there's information in these applications that could undermine law enforcement activities and investigations, such as the identity of the individuals, their passport numbers, or other personally identifying information that would alert the target that they may be about to be apprehended. So if all of that has to be redacted because it poses a real threat to the investigation, to law enforcement, and to the individual law enforcement officers involved, I assume then the caption, the case number, all of that has to be redacted, the name of the AUSA, agents, anything that could tip somebody off. So what you're left with would be an application that says we're seeking technical assistance, which seems to be information that's already publicly known that this vehicle exists. So I'm not sure I understand what you could accomplish if we were to say, yes, they have to release the shell, the fact that they seek technical assistance. I take the point, Your Honor, and I make two arguments in response. First, the fact that the government might think the leftover information is boring is not a compelling reason for sealing within the meaning of this Court's precedent. This Court explained in Kamakana that there's no obligation to affirmatively articulate a compelling reason to unseal under the common law. The default is access, and it prevails wherever there aren't compelling reasons for secrecy. But to the substance of your question, it's, in fact, deeply interesting to the public whether these orders look just like the other ones we've seen, because as this Court has explained in cases like Custer Battlefield Museum, part of the logic of the right of to see whether the federal courts are engaging in independent legal reasoning about the motions that come before them or whether they are acting as a rubber stamp. We've now seen several of the All Writs Act applications and orders to SABR that compel this form of assistance that implicates challenging constitutional questions. So far, none of the government's applications that we have seen contain meaningful legal argument, and the proposed orders that end up getting signed that we've seen, likewise, don't contain any substantive legal reasoning. And if that turns out to be the case here as well, and the records are, in that sense, very boring, the public has a right to know that, that in none of these cases that the government cited in the Southern District of California as precedent for the form of assistance that it was asking for actually engaged in a legal analysis of the question presented. All right. Thank you, counsel. You've exceeded your time, but we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. We ask that the district courts be reversed. All right. Thank you. Good morning, Your Honors. May it please the Court, Josh Handel for the United States. We agree with petitioners that the First Amendment and the common law grant capacious rights of public access to judicial proceedings, but that access has always been subject to certain common sense limitations to ensure that sensitive information is not disclosed at a time and in a manner that would defeat legitimate objectives served by those very proceedings. For that reason, neither the First Amendment nor the common law has historically entitled the public or the press to access judicial proceedings to effectuate sealed warrants. And there is no logical reason to depart from that historical practice because opening such proceedings to the public would undermine the very investigative undertakings that those proceedings are meant to facilitate. Counsel, what's your response to opposing counsel's position that the writ in execution of a warrant is different than a warrant itself and should be assessed differently? Absolutely, Your Honor. So I think that here we would look at index newspapers for some good analogical reasoning. And in index newspapers, this Court was considering certain motions and papers related to contempt proceedings that were tethered to grand jury proceedings, but they were not themselves grand jury transcripts. And so I recognize that, you know, as our friends on the other side pointed out in their brief, this Court has recognized grand jury transcripts as a category of material that is, you know, kind of categorically outside the ambit of the common law presumption of access. But in deciding that the common law presumption also does not reach these contempt proceedings, or at least the government's request to hold someone in contempt in index newspapers, the Court bunched that in with grand jury transcripts. It didn't say, you know, contempt motions are exactly the same as grand jury transcripts in the same way that technical assistance applications and technical assistance orders are not exactly the same as the underlying warrant materials, but they are sufficiently similar, and importantly, they go to the same government interest in secrecy, right? And that's what the Court said in index newspapers. It said that to release these contempt motions, to release these proceedings and papers that are kind of tangentially related to the grand jury would have a high likelihood of reciting material that we keep secret for important grand jury purposes. Even though those are not, you know, I agree with Your Honor, these are not, you know, specifically exactly the same as the underlying warrant materials in the same way that in index newspapers the contempt motions were not exactly the same as the grand jury proceedings, but they're sufficiently similar. There's a nexus there. There's an analogy that the Court can draw. And they serve the same interest in secrecy. Go ahead. To pick up with the point that Judge Rawlinson made at the beginning, is it also a matter of timing? Oh, I mean, I think that absolutely bears on this case, Your Honor. As, you know, the government's position in the Eastern District of Virginia exemplifies, and as I believe we said in our answering brief in this Court, the analysis differs once an investigation is closed, once it has been made public, you know, the underlying warrant and the underlying investigation has been made public, and there's no longer the risk of tipping off the target of the underlying warrant, which this Court recognized in Times Mirror as the principal secrecy interest in these materials. So, yes, I absolutely do think that timing is a huge consideration that mattered to both of the district courts here, and it matters, or it should matter to this Court on appeal. So the government would not object if the approach taken by the Northern District of California were adopted by this Court? Your Honor, I think that, you know, we have not cross-appealed that portion of the Northern District of California, so we have, you know, we are not leveling any objection to that approach here. I don't know that it's strictly appropriate for this Court to impose that approach here because, as I believe we pointed out in our brief, petitioners did not request that relief in the Western District of Washington, the Northern District of Cal—or in the Northern District of California, to the best of my recollection. The Northern District of California sort of imposed that relief sui sponte. So I think, you know, in the Western District of Washington, it wouldn't be strictly appropriate to grant that relief. Why not? If that's part of the issue regarding the timing, the timing is crucial to why the document should be sealed, then why wouldn't it be appropriate to say that once the urgency has been dissipated, that then the Court can examine whether or not to release those? Right. So, Judge Rawlinson, I'm definitely not going to die on this Hill. I absolutely think that that could be a reasonable exercise of a Court's supervisory power over its own documents. As I said, we have not disputed the propriety of the Northern District of California imposing that remedy here. I was trying to make, I think, just a narrower point about, you know, if you expect to get for that relief in the first instance from the District Court, which we don't understand them to have done in this case in the Western District of Washington and in the Northern District of California, that order is already in place. But if that's something that, you know, the Court would be more comfortable with, imposing an order along those lines, again, the government has no objection to that. As the proceedings in the Eastern District of Virginia exemplify, we are willing to take a fresh look at this analysis once an investigation is closed and there's no longer a danger of exposure, you know, either of the actual identifying information of the target of the investigation or of other operational details about the investigation that could permit evasion from detection. What would be the interest of the government in keeping the documents sealed at that point? So sort of speaking hypothetically, not about, you know, what may or may not be in these particular sealed filings, but hypothetically, if a particular method of technical assistance, if a particular investigative tool has not already become public and it's something that the government would like to use in future cases to apprehend other fugitives, perhaps other international fugitives or something like that, I think that there, there's a separate standalone interest. Aside from tipping off just the particular target of a single investigation, we have a broader interest in concealing the existence of that capability from people who would be interested in evading it. I'm not representing that that's the case here. You know, as my friend mentioned during his time at the lectern, we have acknowledged in our affidavit filed in the Western District of Washington, in kind of broad terms, what this technical assistance looks like. This is already in the public sphere. Forbes has reported on it. There's, you know, a lively public debate about this. And so I think the question here is just, what is the incremental value on top of that general acknowledgement by the government, on top of that general public knowledge and what is the incremental value of unsealing these particular technical assistance materials at this juncture while these investigations are ongoing? And we would submit that, you know, kind of even setting aside the fact that the First Amendment and the common law, in our view, do not provide for a presumption of access to these materials. There is vanishingly little incremental value to unsealing these materials at this juncture. Your friend on the other side. Doesn't that suggest, I'm sorry, doesn't that suggest also that there's very little risk to the investigation or to law enforcement if the documents are disclosed but heavily redacted? Well, Your Honor, I mean, of course, you know, that kind of depends on how heavily redacted they are. Certainly, you know, in almost every case, we could hand over documents that are virtually entirely redacted and it would be difficult to argue that, you know, there's a compelling harm to the government from doing so. I think that, you know, the way that I would conceptualize this is there is already kind of the general awareness of the nature of the technical assistance that the government has obtained in certain cases. There's an awareness of the company that has provided that technical assistance to us. And so, again, we are just fighting about kind of the marginal value here. We're just fighting about the incremental value of revealing particulars of these investigations that remain ongoing for fugitives who remain at large. Your opposing counsel said that the public has an interest in seeing this information even if it's quite boring. So, and I posed to him that everything that identified any fugitive or suspect would be eliminated, including the names of agents, AUSAs, judges, case numbers. It's all you have is the shell, basically, that identifies what the type of assistance is sought and what the content is and how this is requested. I'm having a hard time seeing how that poses any threat to any of the government's interest and why it has to be a broad order that this material is never produced unless an investigation is closed, even if it could be produced in such a way that all of that threat is eliminated. Sure. So, Judge Beatty, let me take a few steps back here because I think that we don't actually get to kind of this interest balancing test or the question about redactions or anything like that until this court or unless this court determines that some presumption of public access under either the First Amendment or the common law attaches in the first place. And I would point to what you said in index newspapers, which was, quote, determining whether there is a public right of access requires looking at the class of proceedings as a whole, not the particular proceedings at issue in this case. So, our frontline position would be that no right of access attaches under either the First Amendment or the common law to these kinds of materials in aid of a sealed warrant while the investigation is ongoing before we even get to questions of, you know, kind of the particular value that might be gleaned from, you know, heavily redacted documents or anything like that. But just to address that second portion of your question, I think that, you know, this is kind of a—it's difficult to talk about this without, you know, divulging anything that's actually in these sealed filings, and I certainly don't want to speculate about that in open court. But I would say that even, you know, very kind of anodyne details, the confirmation of anodyne details such as what districts these are in or, you know, which companies in particular received the technical assistance orders or what the timeframe was or things of that nature can provide a lot of information under sort of a mosaic theory to these sophisticated international fugitives, you know, who may on certain occasions be assisted by national governments or other fairly malignant actors on the world stage. And so we think that, you know, rather than forcing the government to categorically litigate these types of things with respect to every filing that occurs during, you know, kind of the preliminary stages of an investigation before the suspect, before the target of the underlying warrant has been apprehended, this court should take the categorical view and look at these and say, neither the First Amendment nor the common law has ever accorded a general presumption of public access to materials like this or to the presumption of public access. Ginsburg. A pausing counsel made a distinction between the First Amendment and the common law presumptions on the premise that we don't look at experience and history for the common law. Do you agree that that's the approach for the common law? I do not, Your Honor. So with respect to my friend on the other side, I recognize that everyone agrees that the First Amendment does turn on the experience and logic test. But this court in Times Mirror characterized the common law inquiry as asking whether the materials have, quote, traditionally been kept secret for important policy reasons. And so I think both of those tests ultimately turn on functionally the same two factors, history on the one side or tradition on the one side and rationale on the other. Whether you want to call that rationale experience or logic or policy or, you know, what have you. But I don't know how you can determine whether something has traditionally been kept secret for important policy reasons without looking at history. I mean, tradition is just kind of history. Yeah. Tell us the history, please, of these writs in assistance, how the tradition under which they have been kept secret. Right. So, Your Honor, I think that we would rely on sort of the approach that this court has taken on a couple of different occasions, which is it's difficult to prove a negative, right? It's somewhat difficult to point to a robust history of things that are not reflected in the federal reporter or something like that. What we would say is these are roughly analogous to warrant materials that, you know, materials that are in aid of warrants, materials that recite the existence of sealed warrants are roughly analogous to sealed warrant materials in the same way that index newspapers said that materials in aid of the grand jury proceedings are roughly analogous to grand jury transcripts themselves. But isn't that the point of the distinction that's made by opposing counsel, that there is no history under the common law of protecting these precise documents, these types of documents? So I absolutely recognize that much of the dispute in this case sort of comes down to the level of generality at which you define the relevant proceedings or the relevant materials. I think that, you know, petitioners have asked you to view these as proceedings to just obtain garden variety injunctions. We would look at them as proceedings to effectuate sealed warrants. And so I would say in a proceeding to effectuate a sealed warrant, there is no material distinction between that type of proceeding and a proceeding to obtain or enforce a warrant. And we would draw on the history of warrant materials, which this court in times mirror recognized as being historically kept from public view, at least during the pendency of the investigation. Were the documents provided to the court? I believe they were, Your Honor, yes. I know for a fact that we had a sealed statement of facts that was submitted in the Northern District of California and the public affidavit that was submitted in the Western District of Washington. Well, that's different than submitting the documents, because in a warrant setting, everything is submitted to the court, and the court goes through everything. So to me, that would be a crucial distinction if the documents were not actually submitted to the court for the court's review. That would be a difference between the warrant arena and this with the writ in assistance of a warrant. I understand, Judge Rawlinson. I believe that they were submitted to the district courts. I know that these warrants that we're talking about were issued by the district courts that then ruled on petitioner's motions. So I believe that the district judges had those in hand. So, counsel, part of the reasoning in times mirror was that there were other methods to protect the public's interest, other means to curb government abuse, such as suppression motions or 1983 civil rights cases. Are there any other methods that could be available in this context? And perhaps this circles back to Judge Rawlinson's question about orders that require the government to identify when the investigation is concluded. Sure, Your Honor. So certainly, I think the order in the Northern District of California is something that will ensure, you know, has imposed on the government some ongoing reporting requirement. I would also point out that, you know, I think that there's a number of possible remedies that either the target of one of these technical assistance orders, meaning the subject of the underlying warrant, or the subject of the technical assistance order, meaning Sabre or a company that is on the receiving end of the All Writs Act order from the court. I think that they have a number of remedies, right? You mentioned Section 1983 suits. I don't see why that would not possibly be available to defendants here. I think that, you know, courts have gone different ways on the suppression question, but it's at least theoretically possible that a defendant who is apprehended by virtue of obtained suppression of evidence that was taken, you know, as part of that operation. I think that, you know, certainly if the recipient of an All Writs Act order or the respondent to an All Writs Act application resisted and did not want to provide that technical assistance, there's relief available in this court, and this court is able to consider that issue at a more abstract level and perhaps issue public opinions that provide forward guidance to district courts in this circuit. So I do not agree at all that, you know, these things are necessarily and categorically, eternally closed off from public view. I'd also point out that not all search warrants come to public view. Not all defendants move for suppression. Not all search warrants result in prosecution. Sometimes they result in declination decisions from the government. So I think that that argument is kind of both over- and under-inclusive. Unless the court has further questions, I'll rest on our brief and respectfully request that you affirm the judgments below. It appears not. Thank you, counsel. Thank you. Rebuttal. Let's start with two minutes. Thank you, Your Honors. If I manage to squeeze it in, I'd like to address three quick points, one about index newspapers, one about timing, and then a quick clarification of my response to Judge Beatty's hypothetical earlier. On index newspapers, the government's characterization of that case just does not fit what the court said. It accurately describes what the district court there had done and what the district courts in this case did, which was reason that grand jury proceedings are secret, those proceedings were ancillary to grand jury proceedings, and therefore all of the records filed in them were secret. This court took a very different approach, distinguishing different categories of records based on their role in the legal process, and the court did not conclude, as my friend suggested, that the common law presumption did not attach to things like contempt order there. It held that it was overcome on the facts of the particular case. As I took from Judge Rawlinson's question, the fact that we can't tell whether the district courts read the records at issue here underlines that that analysis didn't take place here. On timing, I'm glad the government doesn't oppose our request that this court exercise its supervisory authority, and I think it underlines that something like that is necessary. If this court does, although we think it shouldn't, extend the time's mirror rule, I think on the suggestion that it's not properly presented, we can't ask a district court to exercise the Ninth Circuit's supervisory authority, so we ask this court to do it in our opening brief. I would also note that the government's point on timing is a bit of a red herring, because the government's brief took the position that the presumption simply doesn't attach to all Writz Act proceedings ancillary to an arrest warrant, on which view there is no possibility of moving case by case in a closed investigation. And I took my colleague's point about the secrecy of law enforcement techniques lasting after the end of the investigation to suggest there generally should not be public access, even at a later stage, if the technique at issue is new, which is exactly the scenario under which the public interest is most acute. My last clarification in response to your question, Your Honor, we would not necessarily agree that information like the case number or the AOSA can always be kept secret. These case numbers in particular are already public, and I think there would at least need to be a case-by-case balancing about whether there was any realistic possibility that the fact that an order was entered in a particular jurisdiction in a particular year could prompt anyone in particular to flee. In past cases, like some instances of the Apple litigation, the government itself has received a particular order or number of orders is the kind of thing that can be disclosed without harm to an investigation. If there are no further questions, Your Honor, we rest and ask for a reversal. It appears not. Excuse me. Thank you. Thank you to both counsel for your helpful argument in this challenging case. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BADE, BRESS